JUSTICE RICE,
dissenting.
¶24 I respectfully dissent.
¶25 “If events are capable of different interpretations, the trier of fact determines which is most reasonable.” State v. Brogan (1993), 261 Mont. 79, 87, 862 P.2d 19, 24. Our duty is not to ascertain whether the evidence would support a different factual finding, but to assure that the findings adopted by the trial court are not clearly erroneous and supported by substantial evidence, including those factual findings made by the trial court in ruling on a motion to suppress evidence. See State v. Weaselboy, 1999 MT 274, ¶¶ 6, 24, 296 Mont. 503, ¶¶ 6, 24, 989 P.2d 836, ¶¶ 6, 24. The weight of the evidence is to be left to the district court as the trier of fact. Concluding that there is sufficient evidence to support the District Court’s findings and its interpretation of the events at issue, I would affirm.
¶26 It should be noted that the usual order of presentation-the State proceeding first-was reversed in this matter. Defense counsel called witnesses first, and called Officer Finkle to the stand as his first witness. It should come as no surprise that defense counsel made no effort to develop testimony in support of a “community caretaker” theory of the case during his direct examination of Officer Finkle. That burden fell to the State to be developed on cross-examination.
¶27 Officer Finkle testified during the prosecutor’s cross-examination:
Q. Okay. Is it part of your normal patrol procedure to stop and check vehicles that are parked on the side of the highway?
A. Yes, it is.
Q. Let me ask you this. Is that a normal parking area?
A. No, this was not.
Q. Okay. And what’s the purpose of stopping to check on a vehicle that’s pulled off the road in an area like that?
A. To see if the vehicle is disabled; to see if possibly there is *312 someone in the vehicle who had been drinking and passed out; if the vehicle is creating a hazard on the roadside; if they have mechanical problems. There’s a myriad of reasons.
Q. Okay. And how long did you tap on the window before you got a response from the driver?
A. Two to three minutes.
Q. Okay. In your experience is that-when you testified on direct you referred to him as being passed out. In your experience is that length of time to arouse somebody consistent with somebody who has been drinking?
A. Correct.
Q. Now you were parked behind the vehicle with your lights on. A. Correct.
Q. What’s the purpose of turning your lights on?
A. That’s for my safety, the vehicles on the highway, the safety of the individual in the vehicle, if there is someone in the vehicle .... Q. Obviously you didn’t turn your lights on to make the vehicle come to a stop; correct?
A. No.
Q. Would you have gone back to the vehicle even if you didn’t have the report from dispatch about the possible drunk driving? A. Yes, I would have.
¶28 After hearing the witnesses, the District Court assessed their credibility, weighed the evidence, and entered findings of fact. It found that at 5:43 a.m., on September 16, 2000, Officer Finkle observed a green Ford pickup parked on the side of Highway 93, just outside of the Ronan city limits, in an area which was not a normal parking area, and further, that it was a normal part of Finkle’s duty to stop and check vehicles stopped in this area, even without receiving a call about a possible drunk driver (Finding #2). The District Court also found that the officer activated his lights to warn passing motorists of the hazard by the road and that the defendant was passed out behind the wheel, and not just sleeping (Finding #3). The District Court concluded that “independent of the earlier citizen report, Officer Finkle had a responsibility and a community caretaking duty to check on the welfare of the driver when the officer came upon the vehicle parked on the shoulder of Highway 93 with the driver asleep or passed out at the wheel.” (Conclusion #4.)
¶29 Given the testimony, there was substantial evidence to support *313 the interpretation of these events which the trier of fact determined was “the most reasonable.” Brogan, 261 Mont. at 87, 862 P.2d at 24. The record reveals “objective, specific and articulable facts from which an experienced officer would suspect that a citizen is in need of help or is in peril. . . .” State v. Lovegren, 2002 MT 153, ¶ 25, 310 Mont. 358, ¶ 25, 51 P.3d 471, ¶ 25. It was indeed Officer Finkle’s duty, which he properly executed, and the duty of all police officers in like situations, to check a vehicle parked along a busy highway at 5:43 in the morning, in a place where vehicles do not normally park and which could present a hazard to traffic, to see if someone needed help or was in peril. That check properly led to the discovery of evidence that the defendant was driving while under the influence.
¶30 I would affirm.